UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

AUREL A. ASTILEAN,

Plaintiff,

-against-

WOODWAY USA, INC. and DOUGLAS BAYERLEIN,

Defendants.

------------------------------------x

**MEMORANDUM & ORDER**
22-CV-7993 (EK)(JAM)

ERIC KOMITEE, United States District Judge:

Woodway USA, Inc. ("Woodway") sells treadmills, including the product that gave rise to this litigation: a "curved, non-motorized treadmill." Aurel Astilean, who controls a company called Speedfit LLC, has long claimed that he invented the treadmill at issue and that Woodway stole the design from him. That claim led to protracted litigation that began in this district in 2013 and comprised two separate cases.

Six years ago, Woodway, Astilean, and Speedfit agreed to resolve those disputes, entering into a comprehensive settlement agreement. But now, Woodway and Astilean have returned to federal court — each alleging that the other breached the settlement agreement. Astilean, who is now proceeding *pro se*, is also suing Woodway's president, Douglas Bayerlein, for allegedly "engineering" that company's breach. Woodway asserts its breach of contract claim against Astilean

and Speedfit, and adds trademark infringement and unfair competition claims against them for statements on Speedfit's website.

Bayerlein now moves to dismiss, arguing that this Court lacks personal jurisdiction over him. For the reasons set forth below, that motion is granted.

Woodway moves for summary judgment on its claim that Astilean breached the settlement agreement, and on Astilean's claims as well. For the reasons set forth below, we grant Woodway's motion on its own claims in part, and grant summary judgment to Woodway on Astilean's claims.

## I. Background

### A. The Summary Judgment Record

The following facts are drawn from the parties' submissions in connection with Woodway's motion for summary judgment. Astilean did not file a Rule 56.1 counterstatement. The Court therefore credits Woodway's statement of facts, but only where it is "satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).[1] The Court views

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

the facts in the light most favorable to Astilean, as the non-moving party. *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005). Unless otherwise noted, the following facts are undisputed.

Astilean is the president and sole member of Speedfit LLC ("Speedfit"), a company that sells curved, non-motorized treadmills. Statement of Undisputed Material Facts ("Woodway 56.1") ¶ 30, ECF No. 72. Woodway sells similar treadmills (among other products). Woodway's Mem. in Supp. of Summ. J. 2 ("Woodway's Br."), ECF No. 71. Astilean and Woodway dispute the genesis of Woodway's line of curved, non-motorized treadmills. Astilean has alleged that, eighteen years ago, he shared a prototype with Woodway. *See Speedfit LLC v. Woodway USA, Inc.*, 432 F. Supp. 3d 183, 197-98 (E.D.N.Y. 2020). He claims Woodway then patented his invention without naming him as an inventor and sold the treadmill without compensating him. *See id.*; Woodway 56.1 ¶ 56. Woodway disputes these allegations. *See* Woodway's Br. 2.

Astilean and Speedfit brought two prior lawsuits against Woodway, in 2013 and 2017. The first was for correction of patent inventorship, breach of contract, unjust enrichment, constructive trust, breach of fiduciary duty, and conversion. Woodway 56.1 ¶ 4 (referencing *Speedfit LLC, et al. v. Woodway*

*USA, Inc.*, Case No. 13-CV-01276). The second was for correction of patent inventorship of several patents, including U.S. Design Patent D736,866 ("'866 design patent"). Woodway 56.1 ¶ 5 (referencing *Speedfit LLC, et al. v. Woodway USA, Inc.*, Case No. 17-CV-00768). That patent protects the ornamental design of the curved treadmill sold by Woodway — the one that Astilean claims he invented. *See* U.S. Patent No. D736,866 (filed Oct. 14, 2014) (issued Aug. 18, 2015).

Before trial was set to begin in the 2013 case, Speedfit, Astilean, and Woodway signed a settlement agreement resolving both cases. *See* Woodway's Mot. Summ. J. Ex. 1 ("Agreement"), ECF No. 73-1; Woodway 56.1 ¶¶ 6, 22, 24. The Agreement required Woodway to assign the '866 design patent to Speedfit, which it has since done. Woodway 56.1 ¶¶ 26(a), 27.

The Agreement also contained a "cooperation clause" requiring the parties to "cooperate and promptly execute any additional documents and take any other actions that are reasonably necessary to carry out the parties' obligations and intended results of this Settlement Agreement." *Id.* ¶ 26(j). Astilean reads this clause to have obligated Woodway to add him as an inventor on the '866 design patent. *Id.* ¶ 56. Woodway disputes this interpretation and has not named Astilean as the sole or a joint inventor. *Id.* ¶ 45. Astilean argues that this

is a problem because he intends to sue third parties for infringing the ’866 design patent. *Id.* ¶ 56. He believes, however, that he cannot bring those suits unless he is named as an inventor. *Id.*

Lastly, as relevant here (and as discussed further below), the Agreement contained mutual no-challenge, non-disparagement, confidentiality, and release provisions. *Id.* ¶¶ 26(e), 26(f), 26(g).

**B. Astilean’s Jurisdictional Allegations**

In reviewing Bayerlein’s motion to dismiss for lack of personal jurisdiction, we take the following facts from the pleadings and the materials submitted in connection with the motion. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). For purposes of resolving the motion to dismiss, and because jurisdictional discovery has occurred, we construe the record in the light most favorable to Astilean, credit his averments of jurisdictional fact as true, and resolve all doubts in his favor. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

In the Agreement, Woodway consented to jurisdiction in this Court. As discussed below, one way that Bayerlein may be subject to New York’s long-arm statute is that he — and his actions in this case — are so “closely related” to Woodway and

its conduct that Woodway's consent extends to Bayerlein by operation of New York law. Accordingly, we set forth certain facts concerning Bayerlein's relationship to Woodway and his involvement in the events leading to the Agreement's execution.

Bayerlein is the president of Woodway. Agreement 12.[2] Astilean alleges that he "deceitfully and willfully engineered" Woodway's breach of the Agreement — a legal conclusion we do not assume to be true. Compl. ¶ 4. Bayerlein is a citizen of Wisconsin. Notice of Removal ¶ 8, ECF No. 1.

Astilean says in his brief that "on the eve of the [2013] trial, [he] was contacted by Mr. Bayerlein, who offered to settle the case." Mem. of Law in Opp'n to Def.s' Mots. to Dismiss & for Summ. J. 11 ("Astilean's Br."), ECF No. 80.[3]

---

[2] The complaint alleges "upon information and belief" that Bayerlein is "the owner of Woodway." Compl. ¶ 4, ECF No. 1-1. Facts in a "verified" complaint like Astilean's are typically credited, but "[c]onclusory allegations based only on information and belief are not sufficient." *McGlone v. Thermotex, Inc.*, 740 F. Supp. 2d 381, 383 (E.D.N.Y. 2010); *cf. Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) ("[Federal Rule of Civil Procedure 56's] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'"). The Agreement is, however, "integral" to the complaint and incorporated into it by reference. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). The Agreement sets forth that Bayerlein is the president of Woodway. Agreement 12.

[3] We may consider this factual assertion because Astilean's brief ends with an unsworn declaration that its contents are "true and correct" under penalty of perjury. Astilean's Br. 27. Section 1746 of Title 28 provides that "[w]herever . . . any matter is required or permitted to be supported . . . [by] affidavit" of a person, the matter "may, with like force and effect," be established by that person's unsworn written statement

Bayerlein did not address this assertion in his reply. Bayerlein signed the Agreement on behalf of Woodway. Agreement 16.

**C. Procedural History**

The instant case comprises two actions that were filed separately and later consolidated. Astilean and Speedfit filed suit in the case docketed at No. 22-CV-7993. Both were represented by counsel at the time of filing. Count I of the complaint alleges that Woodway and Bayerlein breached the Agreement by failing to correct inventorship on the ’866 design patent. Compl. ¶¶ 17, 24, 42, ECF No. 1-1. Count II seeks rescission of the Agreement. *Id.* ¶ 34.[4] Count III seeks an injunction preventing Woodway from “manufacturing and selling any non-motorized curved treadmill.” *Id.* ¶ 42.

Before briefing had begun on motion practice, Astilean and Speedfit’s counsel withdrew. *See* Docket Order dated August 2, 2023. Speedfit has not obtained new counsel, and — given the

“subscribed by him, as true under penalty of perjury, and dated, in substantially the following form.” 28 U.S.C. § 1746; *cf. Edwards v. Arocho*, 125 F.4th 336, 348 (2d Cir. 2024) (holding that factual assertions in a *pro se* litigant’s brief, verified by a declaration complying with 28 U.S.C. § 1746, constituted admissible evidence).

[4] In New York, rescission can be pleaded as an independent cause of action. *See English v. Brady*, 244 A.D.3d 1739, 1740 (4th Dept. 2025) (“Rescission is an equitable cause of action.”).

axiom that business organizations cannot proceed *pro se* — the Court dismissed its claims for failure to prosecute. Mem. & Order, ECF No. 64.

Three days after Astilean and Speedfit filed, Woodway filed its own suit against them, alleging breach of contract, trademark infringement, and unfair competition under federal and state law. Woodway 56.1 ¶ 34; 22-CV-2455 Compl. ¶¶ 40, 55, 62, 70, ECF No. 1. Woodway asserted that Astilean breached the Agreement's no-challenge, non-disparagement, confidentiality, and release provisions. Woodway's Br. 18-21. Woodway seeks specific performance of these obligations under the Agreement. *Id.* at 22. On May 23, 2024, the cases were consolidated under 22-CV-7993. Minute Entry & Ord. dated May 23, 2024.

Bayerlein has moved to dismiss for lack of personal jurisdiction. Woodway has moved for summary judgment on its breach of contract claim against Astilean. Woodway has also moved for summary judgment on Astilean's claims.[5]

## II. Legal Standards

***Motion to dismiss.*** Once personal jurisdiction has been challenged, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank*

[5] Woodway is *not* moving for summary judgment on its trademark infringement and unfair competition claims.

*Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). On a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a *prima facie* showing that jurisdiction exists. *See Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). However, where, as here, discovery regarding a defendant's forum contacts has been conducted but no evidentiary hearing has been held, the "plaintiff['s] *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Chloé*, 616 F.3d at 163.

"In assessing the plaintiff's showing, the court applies a standard akin to that on a motion for summary judgment, construing the pleadings[,] documents, and other evidentiary materials in the light most favorable to the plaintiff and all doubts are resolved in its favor." *Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 250 (S.D.N.Y. 2020). However, the Court is not to "draw argumentative inferences in the plaintiff's favor." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

Astilean's complaint was drafted by counsel, so the liberal construction rules typically afforded to *pro se*

plaintiffs do not apply. *See Spira v. J.P. Morgan Chase & Co.*, 466 F. App'x 20, 22 n.1 (2d Cir. 2012). Astilean drafted his motions papers himself, however, so we afford those some special solicitude. *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

***Summary Judgment.*** Summary judgment is appropriate when there is no genuine dispute of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). And "[a] fact is material if it might affect the outcome of the suit under governing law." *Id.*

The movant bears the burden of showing that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries that burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). If the nonmoving party fails to do so, the Court should grant summary judgment. *Id.* In performing this analysis, the Court resolves all ambiguities and draws all inferences in favor of the nonmoving party. *E.g.*,

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).

## III. Discussion

We address the jurisdictional question first and then turn to the summary judgment motion.

### A. Bayerlein's Motion to Dismiss

Bayerlein argues that the Court lacks personal jurisdiction over him. Living and working in Wisconsin, he contends, his contacts with New York are not so "continuous and systematic" as to give rise to general jurisdiction. Bayerlein's Mem. in Supp. of Mot. to Dismiss ("Bayerlein's Br.") 11, ECF No. 68-1. And he says that he is not subject to specific personal jurisdiction, either, because Astilean's claims "do not arise out of contacts that [Bayerlein] has with New York, nor even out of contacts Woodway has" with the state. *Id.* Bayerlein maintains that while Astilean's claims arise out of Woodway's alleged breach of the Agreement, he "was not a party to that Settlement Agreement, and Plaintiffs fail to plausibly allege any basis for imputing Woodway's contacts with New York to" him personally. *Id.*

As a general rule, a federal court based in New York may exercise personal jurisdiction over an out-of-state defendant when (1) New York state law provides a basis for

jurisdiction and (2) exercising jurisdiction comports with due process. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). We consider these questions in turn.

1. Compliance With New York Law

The exercise of personal jurisdiction over Bayerlein comports with Section 301 of New York's Civil Practice Law and Rules. That section incorporated the common law predating its adoption: it provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." CPLR § 301. And at common law, consent was a traditional basis for jurisdiction in New York. *See, e.g.*, *Gilbert v. Burnstine*, 255 N.Y. 348, 355 (1931) ("Jurisdiction over the person of the defendant may be acquired by his consent.").

Bayerlein signed the Agreement on Woodway's behalf. It contained a forum-selection clause in which the parties agreed to the "exclusive jurisdiction of the United States District Court for the Eastern District of New York" for "all claims . . . relating to th[e] Settlement Agreement." Agreement ¶ 20.

To be sure, Bayerlein signed in his capacity as President of Woodway, not his personal capacity. Bayerlein

himself is not a party to the Agreement. As a matter of *state* law, however, that may not matter. New York recognizes the "closely related" doctrine, in which "[a] non-signatory [to a contract] may also be bound by a forum selection clause where the non-signatory and a party to the agreement have such a close relationship that it is foreseeable that the forum selection clause will be enforced against the non-signatory." *Highland Crusader Offshore Partners, L.P. v. Targeted Delivery Techs. Holdings, Ltd.*, 184 A.D.3d 116, 122 (1st Dept. 2020); *see also P.S. Fin., LLC v. Eureka Woodworks, Inc.*, 214 A.D.3d 1, 18 (2d Dept. 2023); *Firefly Equities, LLC v. Ultimate Combustion Co.*, 736 F. Supp. 2d 797, 799 (S.D.N.Y. 2010) (collecting cases).[6]

So, the facts here are sufficient, if credited, to conclude that Bayerlein is bound by the forum-selection clause under the closely related doctrine. It was foreseeable to Bayerlein that the clause would be enforced against him. In *Highland Crusader*, the First Department held that it was "foreseeable that [a] forum selection clause would be enforced

[6] Although the New York Court of Appeals does not appear to have recognized the "closely related" doctrine, the decisions of New York's Appellate Division are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940). We have no indication that the Court of Appeals, which recently denied leave to take up the question, *see EPAC Techs. Ltd. v. Interforum S.A.*, 41 N.Y.3d 975 (2024), would hold otherwise.

against [a] corporate president in his individual capacity where he signed the contract in his representative capacity." *Highland Crusader*, 184 A.D.3d at 124 (citing *Firefly Equities*, 736 F. Supp. 2d at 800). That is exactly what happened here. Bayerlein is the president of Woodway and signed the Agreement in his representative capacity.

Even if that were not enough, courts applying New York law "have found parties to be [ ] closely related . . . where the non-signatory," in this case Bayerlein in his personal capacity, "had an active role in the transaction between the signatories or where the non-signatory had an active role in the company that was the signatory." *Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*, 575 F. Supp. 3d 445, 460 (S.D.N.Y. 2021); *see also Highland Crusader*, 184 A.D.3d at 122 ("It was clear that the entities not only consulted with each other, but also were both involved in the decision-making process from the inception of the Agreement through the commencement of the litigation.").

Astilean attests — and Woodway does not dispute — that it was Bayerlein himself who contacted Astilean with an offer to settle the 2013 and 2017 cases. Astilean's Br. 11. That attestation, coupled with Bayerlein's status as the president of

Woodway and his signature on the Agreement, would, if credited, suffice under New York law to establish jurisdiction over him.

2. The Due Process Clause

The exercise of personal jurisdiction over Bayerlein must also comport with the constraints of the federal Due Process Clause. See *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). That is, of course, a question of federal, not state, law.

a. Minimum Contacts

The Fourteenth Amendment's Due Process Clause allows the exercise of personal jurisdiction in various circumstances. As alluded to above, one familiar circumstance involves the existence of sufficient "minimum contacts" with the forum state. *See id.* at 702 n.10. "[M]inimum contacts exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Bank Brussels Lambert*, 305 F.3d at 127. It is Astilean's burden to establish the existence of such minimum contacts, and he has not done so. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).

Across the complaint and opposition, Astilean sets forth only two factual assertions that could potentially suffice to establish jurisdiction. The first is that "Doug Bayerlein

. . . is the sole individual responsible for all decision-making processes pertaining the relationship of Woodway with SpeedFit." Astilean's Br. 20. It is well established that a defendant can "purposefully avail itself of a forum by directing its agents or distributors to take action there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018). But "control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation." *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) (Sotomayor, J.). Astilean's blanket statement of control is not adequate.

The second assertion is that "on the eve of the trial, [Astilean] was contacted by Bayerlein, who offered to settle the case." Astilean's Br. 11. "Settling a civil suit . . . is a business transaction" that "should be viewed [no] differently than an ordinary commercial contract." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 167 (2d Cir. 2005). As best this Court can tell, however, no court sitting in New York has ever exercised personal jurisdiction over a nondomiciliary simply because he oversaw a settlement agreement that was neither negotiated nor executed in New York. To the contrary, courts have emphasized "that the defendants *came to New York* to negotiate and enter into the Settlement Agreement." *Ainbinder*

*v. Potter*, 282 F. Supp. 2d 180, 186 (S.D.N.Y. 2003) (emphasis added). Relying on *Ainbinder*, the Second Circuit held that out-of-state attorneys general could be sued in New York after they came to the state and "purposefully dedicated five months to negotiating [a settlement agreement]" with tobacco companies they had sued. *Grand River*, 425 F.3d at 167.

Even when courts have not required that a contract be physically negotiated or executed in New York, they have still insisted on another New York connection. For example, they have asked whether the defendant knowingly negotiated with a counterparty in New York, such that the defendant projected himself into the state. *See Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71-72 (N.Y. 2006). They have also asked whether the defendant visited New York after execution to maintain the contractual relationship. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996). Here, however, Astilean does not tell us where he was when Bayerlein contacted him with a settlement offer. Nor does he argue that Bayerlein subsequently visited New York to maintain the contractual relationship.

Bayerlein's long-distance supervision of the settlement process and execution of the Agreement thus do not, without more, suffice to establish that he "availed [him]self of

the privilege of doing business in the forum." *Bank Brussels Lambert*, 305 F.3d at 127. Accordingly, Astilean has not established personal jurisdiction via the minimum-contacts test.

b. Consent

The "minimum contacts" analysis is, of course, but one path to personal jurisdiction. The Due Process Clause also permits the exercise of such jurisdiction when a defendant has consented to it. *See Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964). For purposes of the due-process analysis, the Second Circuit has not adopted any analogue to New York's "closely related" test as a substitute for consent. *See Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 n.10 (2d Cir. 2013).

The Fifth Circuit has employed the closely related test as a substitute for explicit consent in the due process context. *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 441 (5th Cir. 2022). The court reasoned that unless forum-selection clauses reach closely related non-signatories, the clauses could "easily be evaded," undermining "certainty in commercial transactions." *Id.* at 439-40 (citing *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436 (7th Cir. 2012)). Thus, the doctrine "can serve a purpose in producing equitable results." *Id.* at 441.

I decline to follow that course, however, because it would contravene bedrock principles of contract, corporate, and agency law to do so. As a general matter, "[i]t goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). That principle has particular force when the contracting party is a business entity, because a central purpose of the corporate form is to separate the liabilities of the entity from those who own and operate it: "[t]he corporate owner / employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001). And, because an entity can act only through individuals, agency law preserves that separation: "[w]here the principal is disclosed, and the agent is known to be acting as such, the latter cannot be made personally liable unless he agreed to be so." *Whitney v. Wyman*, 101 U.S. 392, 396 (1879); *see also Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 F. App'x 4, 10 (2d Cir. 2012) ("For a corporate representative to be personally bound by a contract, the officer must sign both in a representative and in an individual capacity.").

In employing the closely related test to find personal jurisdiction over a non-signatory defendant, the Fifth Circuit itself acknowledged that "there is good reason to be dubious of the [closely related] doctrine" but nevertheless upheld its constitutionality because "it has been recognized by all other circuits to have considered it." *Franlink*, 50 F.4th at 441. No other circuit, however, has invoked the closely related test to exercise personal jurisdiction over an individual who signed a contract only in a representative capacity and objects to its forum-selection clause being enforced against him personally. Instead, the circuits have applied the closely related test to venue or *forum non conveniens* objections when personal jurisdiction otherwise existed. *See id.* at 439 (collecting cases). These are meaningfully different contexts: the rules governing "motions to dismiss based on grounds of improper venue and *forum non conveniens* . . . are driven primarily by concerns for the convenience of litigants and witnesses . . . . [and courts] retain flexibility." *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 394 (S.D.N.Y. 2019). "The rules governing personal jurisdiction, by contrast, are driven by constitutional concerns over the court's power to exercise control over the parties." *Id.*

And if those general principles were not enough, the specific language of the Agreement in this case counsels against the application of the closely related doctrine: the Agreement contains a provision expressly *disclaiming* any third-party obligations. See Agreement ¶ 23 ("No Third-Party Beneficiaries") (stating that "nothing contained herein, express or implied, is intended to confer on any person other than the Parties hereto . . . any . . . obligations"). That language militates against any conclusion that Bayerlein "consented" to jurisdiction in New York.

Finally, it is worth noting that the closely related doctrine has been subject to academic criticism. Commentators have observed that the closely related test is "impossible to reconcile with recent Supreme Court precedents relating to personal jurisdiction with respect to out-of-state defendants." John F. Coyle & Robin J. Effron, *Forum Selection Clauses, Non-Signatories, and Personal Jurisdiction*, 97 NOTRE DAME L. REV. 187, 213 (2021). Those precedents demand "contacts that the defendant himself creates with the forum State," *Walden v. Fiore*, 571 U.S. 277, 284 (2014), but the closely related test looks only to the defendant's relationship with the contract and its signatories, treating the contract as "a proxy for the forum state itself." *Coyle & Effron*, 97 NOTRE DAME L. REV. at 216. And

the Supreme Court has long maintained that "foreseeability alone has never been a sufficient benchmark for personal jurisdiction." *Id.* at 220 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

Thus, the invocation of New York's "closely related" test to imply Bayerlein's consent to jurisdiction would not comport with due process. Accordingly, and for the additional reasons set out above, Bayerlein's motion to dismiss for lack of personal jurisdiction must be granted.

**B. Woodway's Motion for Summary Judgment**

Woodway has moved for summary judgment on (a) its affirmative breach of contract claim against Astilean, as well as (b) Astilean's claims for breach of contract, rescission, and a permanent injunction. We consider Woodway's affirmative claim first, and then turn to Astilean's.

1. Woodway's Breach of Contract Claim

Woodway argues that it is entitled to summary judgment against Astilean on its claim that Astilean breached the Agreement. It contends that Astilean breached the Agreement's no-challenge and non-disparagement clauses through statements that challenged the validity and enforceability of the Woodway patents and disparaged Woodway. It also says that Astilean

breached the confidentiality provision by filing the Agreement on the public docket in a separate case.

In New York, a claim for breach of contract has four elements: (1) the existence of a binding agreement, (2) adequate performance by the party seeking enforcement, (3) a breach by the party against whom enforcement is sought, and (4) damages. *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (applying New York law).

a. Existence of A Binding Agreement

As to the first element, Astilean does not dispute that he executed the Agreement. But he does argue that the Agreement is voidable, for two reasons. *First*, Astilean contends that Woodway secretly acquired Chapco Inc. — a company Astilean planned to sue for infringing the ’866 design patent — and then inserted language in the Agreement that prevented him from suing any Woodway affiliate. Astilean’s Br. 16 (citing Agreement ¶ 7.02). Given Astilean’s *pro se* status, we construe this as a fraudulent concealment defense.

In New York, fraudulent concealment is a valid defense to a breach of contract claim. *See Howe Mach. Co. v. Farrington*, 82 N.Y. 121, 125 (1880); 28 Glen Banks, New York Contract Law § 5:14, at 328 (2d ed. 2017) (“A contract may be unenforceable if there has been a nondisclosure.”). A party

asserting the defense must establish "that the defendant had a duty to disclose material information and that it failed to do so." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011). Because Astilean identifies no such duty to disclose the Chapco acquisition, this defense cannot succeed.

*Second*, Astilean argues that he signed the Agreement under duress. Under New York law, a contract is voidable for duress when the party asserting the claim "was forced to agree to [the contract] by means of a wrongful threat precluding the exercise of his free will." *First Nat'l Bank v. Pepper*, 454 F.2d 626, 632 (2d Cir. 1972). Astilean asserts that when he signed the Agreement, he was faced with "the prospect of two children and a house in foreclosure." Astilean's Br. 16. But "[t]he mere existence of economic pressure does not constitute duress." *Cont'l Airlines, Inc. v. Lelakis*, 943 F. Supp. 300, 307 (S.D.N.Y. 1996) (citing *Walbern Press, Inc. v. C.V. Communications Inc.*, 622 N.Y.S.2d 951, 952 (1st Dept. 1995)).

Thus, Astilean has not even adequately alleged — let alone adduced evidence that could establish — that the Agreement is voidable. On the existing record, no reasonable jury could find in his favor on this element.

b. Adequate Performance of the Contract by the Party Seeking Enforcement

Astilean next argues that he should be excused from performance because Woodway itself breached the Agreement. Astilean's Br. 18. In particular, he argues that the Agreement's cooperation clause required Woodway to "name [him] as an additional inventor" on the '866 patent, which it has not done. *Id.* at 2.

The cooperation clause states that "the parties will cooperate and promptly execute any additional documents and take any other actions that are reasonably necessary to carry out the parties' obligations and intended results of this Settlement Agreement." Agreement ¶ 17. For the "obligation" or "result" that requires the change in inventorship, Astilean looks to Paragraph Three, which assigns Speedfit "all rights of enforcement and recovery for past infringement" of the '866 design patent. *Id.* ¶ 3. Astilean asserts that he is not able to sue for infringement without being acknowledged as an inventor. Woodway 56.1 ¶ 56.

On this point, Astilean is simply mistaken: the argument conflates patent *ownership* and *inventorship*. "[I]nventorship is a question of who actually invented the subject matter claimed in a patent. Ownership, however, is a

question of who owns legal title to the subject matter claimed in a patent." *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993). And "patent owners, *including assignees* and exclusive licensees who were given all substantial rights to the patent, may sue . . . in their own right." *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 354 F. Supp. 3d 375, 383 (S.D.N.Y. 2018) (emphasis added). Thus, Astilean has all he needs to enforce the ornamental patent that Woodway assigned to Speedfit.

Astilean goes on to argue that, as a functional matter, he may have difficulty enforcing the patent without being named as an inventor. Woodway 56.1 ¶ 56. This is because, in his view, the parties against whom he might seek to enforce could argue that the patent is invalid for failure to list him as an inventor. "[I]f nonjoinder of an actual inventor" — that is, the failure to name a given inventor in the patent application — "is proved by clear and convincing evidence, a patent is rendered invalid." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998). Astilean has asserted numerous times that he is an actual inventor of the '866 design patent. *See* Woodway 56.1 ¶ 40.

But Paragraph Three of the Agreement does not guarantee to Astilean that the '866 patent actually can be

enforced. Indeed, the problem with Astilean's reading is that other, more specific text in Paragraph Three expressly forecloses it. Woodway assigned the patent "as is," with no warranties about the patent's validity or enforceability. Agreement ¶ 3. Astilean agreed to this provision and thereby took the risk that the '866 design patent might be unenforceable. He cannot now leverage the general language in Paragraph Three to renegotiate that point.

On this record, then, no reasonable factfinder could find in Astilean's favor on this element.

c. Breach by the Party Against Whom Enforcement is Sought

Woodway asserts that Astilean breached four provisions in the Settlement Agreement: the no-challenge, non-disparagement, confidentiality, and release provisions.

i. No-Challenge Provision

Astilean committed in the Agreement not to "challenge, or assist others in challenging, the validity or enforceability of the Woodway Patents" that were in dispute in the 2013 and 2017 lawsuits. Agreement ¶ 7.02(i). Woodway argues that Astilean violated the no-challenge provision in two ways: (1) by asserting in deposition testimony that he will do "[w]hatever it takes" to "challenge [the inventorship]" of "all the Woodway Patents[,]" "including going to the Patent Office"; and (2) by

stating in a letter in connection with a different case that "Woodway stole my invention and has committed massive and intentional fraud against the US Patent Office by concealing me as either the inventor or an inventor on its now invalid patents." Woodway's Br. 19; Woodway 56.1 ¶¶ 39-40.

It is unclear, as a preliminary matter, that the no-challenge provision is enforceable at all. The Second Circuit has not determined whether "a no-challenge clause in a purely private post-litigation settlement, as distinct from a settlement that has been incorporated into a judicially-approved consent decree, may be enforced" in the patent context. *Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 172 n.7 (2d Cir. 2012). Nonetheless, the no-challenge provision here has what the Second Circuit has indicated are indicia of enforceability: (1) Astilean had real discovery and a genuine opportunity to test the patent's validity before giving up the right to challenge the patent; and (2) the settlement was not a sham license agreement dressed up as a settlement agreement. *Id.* at 172.

Still, Woodway's theory of breach suffers from two insurmountable problems. First, Astilean's testimony about meaning to challenge the validity of the '866 design patent may

amount to a statement of his future intent to breach, but it does not establish a present breach.

Second, read as a whole, the no-challenge provision bars only formal legal challenges, such as litigation seeking the invalidation of a patent or proceedings before the Patent Office.

Construing "challenge" to include statements made outside a tribunal asked to rule on the validity or enforceability of the patents would render meaningless the sentence immediately *after* the language quoted above. That sentence says that Astilean will not "otherwise[] challenge, object to, interfere with, tarnish, denigrate, disparage, ridicule, dilute, demean, or otherwise materially adversely affect the image or goodwill of [Woodway]." Agreement ¶ 7.02(ii). If disparaging and ridiculing constituted the kind of "challenge" prohibited by the preceding sentence, then the latter sentence would be redundant.

This interpretation of "challenge" matches the legal dictionary definition: "to formally call into question . . . the sufficiency or validity of an instrument." *Challenge*, BLACK'S LAW DICTIONARY (2d ed. 1910). And insomuch as any textual ambiguity exists, "surrender of the right to challenge validity of a

patent is construed narrowly." *Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352 (Fed. Cir. 1999).

With the above in mind, Woodway is not entitled to judgment as a matter of law that Astilean's statement — that "Woodway stole my invention and has committed massive and intentional fraud against the US Patent Office by concealing me as either the inventor or an inventor on its now invalid patents" — violated the no-challenge provision. Woodway 56.1 ¶ 40. That statement was not made in connection with a formal legal challenge to the validity or enforceability of a Woodway patent. Rather, Astilean made it as a defendant in another lawsuit, in a letter asking the court to deny a motion to compel his deposition until he could obtain counsel. Woodway 56.1 ¶ 40 (referencing *LifeCORE Fitness, Inc. v. Astilean*, No. 1:24-mc-00846 (E.D.N.Y. Mar. 8, 2024), ECF No. 5). Whether Woodway actually "committed massive and intentional fraud" rendering its patents "invalid" was immaterial to the relief Astilean sought. An assertion untethered to any requested relief is not a challenge for purposes of the no-challenge provision.

Accordingly, Woodway is not entitled to summary judgment on its claim that Astilean breached the no-challenge provision.

ii. Non-Disparagement Provision

As noted, the Agreement also states that Astilean will not "challenge, object to, interfere with, tarnish, denigrate, disparage, ridicule, dilute, demean, or otherwise materially adversely affect the image or goodwill of Woodway or Woodway's Affiliates." Agreement ¶ 7.02(ii). Woodway argues that Astilean has repeatedly disparaged it, including in legal filings in which he asserted that "Woodway stole my invention and has committed massive and intentional fraud against the US Patent Office by concealing me as either the inventor or an inventor on its now invalid patents." Woodway 56.1 ¶ 40. However, courts in New York will not construe non-disparagement provisions to reach statements that were made in the course of judicial proceedings. *See Roberts ex rel. Roberts v. LifeMD Atl. Patient Med. Care, P.C.*, No. 24-CV-8162, 2026 WL 1745713, at *4 (S.D.N.Y. June 16, 2026) (citing *Arts4All, Ltd. v. Hancock*, 773 N.Y.S.2d 348, 351 (1st Dept. 2004)).

Here, Woodway points to only a single set of statements allegedly made by Astilean outside the course of judicial proceedings. Its 56.1 statement asserts that "Astilean has made false statements on the Speedfit website that criticized and challenged the validity of the Woodway Patents and interfered with, tarnished, denigrated, disparaged,

ridiculed, diluted, demeaned, and otherwise materially adversely affected the image and goodwill of Woodway." Woodway 56.1 ¶ 55. For example, Woodway points to the statement that "Speedfit is the leader by being the original designer and first developer of the Curve Treadmill holding more than 10 Patents on the curve designed treadmills." Compl. ¶ 49, *Woodway USA, Inc. v. Astilean*, No. 22-CV-2455, ECF No. 33.

But Woodway cites no record evidence that Speedfit ever published the above quoted statement, or any other, on its website. In its 56.1 statement, Woodway cites only the complaint in 22-CV-2455, Woodway's case against Astilean that was consolidated into the instant action. And a factual assertion cannot, of course, be established by Woodway's own allegations in its complaint. *See Stevenson v. Hearst Consol. Publ'ns, Inc.*, 214 F.2d 902, 907 (2d Cir. 1954); E.D.N.Y. Local Civ. R. 56.1(d) ("Each [56.1] statement by the movant . . . must be followed by citation to evidence that would be admissible . . . ."). Thus, summary judgment is not appropriate to Woodway as to this claim.

iii. Confidentiality Provision

Paragraph 12.01 of the Agreement provides that "[t]he specific terms of the Term Sheet and this Settlement Agreement are confidential and shall not be disclosed by any party to any

other person or entity without the written consent of the other parties." Woodway argues that Astilean breached this provision by posting the Agreement on the public docket of another court. Woodway's Br. 21; Woodway 56.1 ¶ 42. Here, no reasonable factfinder could conclude otherwise. *See Baella-Silva v. Hulsey*, 454 F.3d 5, 11 (1st Cir. 2006) ("Filing a document on the district court's electronic filing system is not consistent with keeping information confidential."); *see also Jaffrey v. Scaminaci*, No. 653352/2022, 2023 WL 4365395, at *3 (N.Y. Sup. Ct. N.Y. Cnty. July 6, 2023) (permitting redaction of confidential investor information from public court filings because such disclosure "would be in breach of the confidentiality provisions" of the governing agreement). Therefore, Woodway is entitled to summary judgment on this claim.

iv. Release Provision

The Settlement Agreement provides that Astilean releases "any and all presently-existing claims" against Bayerlein and Woodway. Agreement ¶ 8.01. Woodway asserts that Astilean has breached the release provision by threatening to do "whatever it takes" to challenge inventorship of the '866 design patent. Woodway's Br. 21.

But, as with his statements regarding the no-challenge provision, Astilean's assertion does not establish a present breach; at most, it may express an intent to breach in the future. And, more fundamentally, Woodway is treating the release provision as a covenant not to sue, which it is not:

> [A] [r]elease does not result in breach upon the filing of a suit. Instead, it provides [the released party] with an effective affirmative defense should a claim be raised. Because the [r]elease was a release of claims and not a covenant not to sue, [the suing party] did not breach the [r]elease with his suit.

*Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 797 (7th Cir. 2005). Therefore, Woodway is not entitled to summary judgment on its claim for breach of the release provision.

d. Damages and Remedies

Woodway argues that it is entitled to specific performance — specifically, that Astilean "should be ordered to abide by the Settlement Agreement" because "monetary damages" would be "inadequate." Woodway's Br. 22. But "specific performance is an equitable remedy for breach of contract," *Warberg Opportunistic Trading Fund, L.P. v. GeoResources, Inc.*, 973 N.Y.S.2d 187, 194 (1st Dept. 2013), and Astilean breached only the confidentiality provision. Our inquiry is therefore limited to whether specific performance is warranted as to the confidentiality provision.

Specific performance is a remedy for a breach of contract when money damages would be inadequate. *See Burke v. Bowen*, 40 N.Y.2d 264, 267 (1976). To substantiate that monetary damages would be inadequate, Woodway points to the Agreement, which contains a provision stating that any breach "will cause irreparable harm," such that "monetary damages alone would not be an adequate remedy." Woodway's Br. 23. But "contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate." *Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987). And the rule is no different for a permanent injunction. "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Parties to a contract cannot stipulate how a court must use its equitable discretion.

Woodway argues that if the "terms of the settlement are not enforced, Woodway will be required to relitigate the same issues that have already been resolved while Mr. Astilean retains the entire benefit, including $1 million in consideration." Woodway's Br. 23. It points to evidence in the record that, it argues, suggests Astilean may breach the Agreement in the future. Woodway 56.1 ¶ 39. However, Woodway

is only entitled to summary judgment on its claim for breach of the confidentiality provision, and it is doubtful that specific performance would provide any meaningful relief. Judge Marutollo already ordered that the leaked document be sealed and Astilean cannot 'take back' the leak. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again."). Thus, we decline to award specific performance.

Nonetheless, we are mindful that this case revisits many of the same issues that the Agreement was intended to resolve. And Woodway has presented evidence suggesting Astilean intends to press the claims he released in the Agreement. *See* Woodway 56.1 ¶ 39. Astilean should note that if future litigation on these subjects constitutes an abuse of the judicial process, the Court will contemplate a filing injunction. *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (district court may issue filing injunction when "a plaintiff abuses the process of the Courts to harass and annoy others with . . . repetitive . . . proceedings"). Were such an injunction to issue, Astilean would need permission from the Court to file additional lawsuits.

2. Astilean's Breach of Contract, Rescission, and Permanent Injunction Claims

Woodway also moves for summary judgment on Astilean's claims against it. As discussed above, there is no genuine dispute of material fact as to whether Woodway breached the Agreement; the record establishes Woodway did not. Thus, summary judgment is appropriate for Count I (for breach of contract) and Count III (for a permanent injunction premised on the alleged breach). Summary judgment is also granted for Woodway on Astilean's Count II (seeking rescission of the Agreement) because, as established above, Astilean has not identified evidence creating a genuine dispute of material fact as to whether Woodway fraudulently concealed facts from him or that he signed the Agreement under duress.

## IV. Conclusion

For the foregoing reasons, Bayerlein's motion to dismiss is granted. Woodway's motion for summary judgment is granted in part and denied in part. The Clerk of Court is respectfully directed to enter judgment for Woodway in 22-CV-7993. By October 29, Woodway is ordered to show cause why, for the reasons stated in this Order, summary judgment should not be granted to Astilean on Woodway's remaining claims for breach of the no-challenge, non-disparagement, and release provisions. Astilean is directed to respond to Woodway's submission by

November 5. Woodway may reply to Astilean's response by November 9.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: October 22, 2026
Brooklyn, New York